### BLATHERWICK v. CAREY and others.

*(Circuit Court, N. D. Illinois.   October 28, 1881.)*

1. LETTERS PATENT—HORSESHOES.
    The distinctive feature of patent No. 170,809, granted to Nelson J. Blatherwick, December 7, 1875, for an improvement in horseshoes, being a projection beyond the wall of the hoof, made by curving the shoe almost at a right angle from the natural toe, or point of the hoof, to a point nearly as far inward as the widest part of the hoof, so that the inner fore-quarter of the shoe was nearly a right angle, is not infringed by a shoe in which the projection is lacking.

2. ESTOPPEL.
    Defendants are not estopped from denying infringement by reason of having at one time acted under a license from the complainant.

In Chancery.

*Merriam & Whipple,* for complainant.

*Wood & Cunningham* and *West & Bond,* for defendants.

BLODGETT, D. J.   This is a bill for infringement of patent No. 170,-809, granted to Nelson J. Blatherwick, the complainant, under date of December 7, 1875, for an improvement in horseshoes, and reaching back by *caveat* to October 21, 1874.   The object of the invention is declared in the specifications to be the construction of a shoe to prevent horses from interfering, and the end is said to be obtained—

"By making the shoe broader and fuller upon the inside than upon the outside, enlarging it at the toe and upon the inside, thus increasing the support for the horse at that point, the effect of which is that in traveling this point is the last to leave the ground, and the tendency is to throw the ankle of the horse outward and away from the opposite leg, instead of inward and towards it, and when the foot leaves the ground it follows this position of the ankle, and is thrown away from rather than towards the opposite leg.   When the ankle is in this position the opposite hoof can pass without interfering."

The drawing (figure 1) shows the inside fore quarter of the shoe carried forward so as to project beyond the wall of the hoof to such an

extent that the projection beyond the hoof would be at least three-fourths of an inch in an average full-sized shoe, and the outside periphery or rim of the shoe is carried back from the point of the projection nearly in a straight line to the beginning of the hind quarter—that is, to the point where the hoof begins to curve in towards the heel; and when a toe calk is used, it is to be located upon the corner or angle thus projected from the inner fore quarter—that is, considerably to one side of the shoe, and coming to or nearly to the outer edge thereof. In other words, the apparent purpose of this device is to practically change the location of the horse's toe from the point of the hoof to this projection inside of the natural toe or forward point of the hoof. The object of the device, and its mode of operation, are quite clearly described by Mr. Powers, complainant's expert, who says:

" The patent shoe is carried forward on its inner side, from the widest part of the foot, in nearly a straight line to and even with the front of the foot, and this forward extension, when the foot tips forward upon the toe in the act of moving, continues the longest in contact with the ground, or leaves the ground last. The effect of this construction and motion is to cause the foot, in its forward progress, to swing or tumble upon this extended point outward, and, to a certain extent, removing the passing foot and leg of the horse from the other leg standing on the ground, thus preventing the moving foot from hitting the opposite stationary one. Each opposite foot, being provided with one of these shoes, in turn tumbles out on this point of the shoe, and thus escapes the other, or does not interfere."

The only questions made in the defence which I deem it necessary to consider are: (1) The construction to be given this patent; (2) whether defendants infringe. The proof shows, and it was admitted on the argument to be true, that horseshoes to prevent interfering had been made and used, long prior to the time when Blatherwick claims to have made this invention, where the inner fore quarter was curved or bent much more sharply than the natural curve of the hoof, and the toe calk placed upon this sharp curve or angle so that the bearing of the toe was upon this calk nearly in a line with the inside bar of the shoe. This is clearly shown by the testimony of John Palmer, A. W. Redner, Thomas Leggett, Michael McNurney, John Trainor, Thomas Cody, and others. Indeed, it may be taken as a proven and an admitted fact in this case that horseshoes, for the purpose of preventing interfering, had been made and used before complainant entered the field, when an attempt, at least, had been made to change the bearing of the toe to a point inside of the natural toe or tip of the hoof.

This inventor did more than this, and made a new and artificial

toe, inside of the natural one, by curving the shoe almost at a right angle from the natural toe or point of the hoof, to a point nearly as far inward—that is, towards the other foot—as the widest part of the hoof, and extending back from this point to the heel, so that the inner fore quarter of the shoe was nearly a right angle, rather than a curve corresponding to the shape of the foot. The necessary effect of this shape is to make the angle of the shoe, as I have already said, to project beyond the wall of the hoof, and this projection forms the tumbling point, as Mr. Powers calls it, or point which last leaves the ground in the act of stepping.

In the light of the testimony as to the state of this art at the time Blatherwick made his invention, I have no doubt this projection beyond the wall of the hoof must be deemed the distinctive feature of his patent; and that he evidently intended this should be so is shown by his drawing, figure 1, where the location of the nail-head channel is such as clearly demonstrates that the corner or angle would project beyond the hoof. With this construction of the complainant's patent it is quite evident that defendants do not infringe, for their shoe (complainant's exhibit 1) has no projection beyond the wall of the hoof. It seems to me to be, in all substantial respects, like the shoes made and used by Palmer, Trainor, and others long prior to complainant's invention. It places the toe calk inside the line of the point of the hoof, and thereby transfers the bearing from the toe, but it does not project or bear beyond the line of the hoof.

It is urged that defendants called the form of shoe which they used the "Blatherwick Shoe;" and it also appears that defendants at one time held a license from complainant; but this does not amount to an estoppel on defendants to deny infringement, and only proves that for a time at least defendants conceded to complainant the broad claim now insisted on in this case: that the patent covers all shoes where the tumbling point is changed to a point inside the line of the natural toe. Not being now acting under a license, defendants are not bound by any implied admission from the fact of having once taken a license.

I therefore conclude that defendants do not, by the use of the shoe shown in the proof to have been made by them, infringe complainant's patent, and the bill will be dismissed at complainant's cost.